AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Acer Laptop Computer (serial no. LXAxxxxxxxxxxxxxxxxx)
External Hard Drive
Memory Cards

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I _____ RICHARD ESPINOSA _____ being duly sworn depose and say:

I am a(n)___ Police Officer for Metropolitan Police Department (MPD) __ and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as

**Acer Laptop Computer (serial no. LXA860545261312F3C2502); External Hard Drive; and Memory Cards,
AS FULLY DESCRIBED IN THE ATTACHED AFFIDAVIT**

concerning a violation of Title __18__ United States Code, Section(s) _§_ 1029. The facts to support a finding of
Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED
HEREIN**

Continued on the attached sheet and made a part hereof.     ☒ YES     ☐ NO

DENISE M. CLARK
Federal Major Crimes Section
(202) 353-8213

Sworn to before me, and subscribed in my presence

_____
Date

_____
Name and Title of Judicial Officer

_____
Signature of Affiant
RICHARD ESPINOSA, DETECTIVE
Metropolitan Police Department

at Washington, D.C.

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Richard Espinosa, a Detective with the Metropolitan Police Department, being duly sworn, depose and say that:

1.      I am a grade one detective with the Metropolitan Police Department, currently assigned to Financial Crimes and Fraud Section.

2.      I have been a law enforcement officer for the past twenty-four years.  I joined the Metropolitan Police Department ("MPD") in 1982.  I have spent the past twenty years serving as an Investigator/Detective Grade II/ Detective Grade I.  I have had the opportunity to be a member of several investigative sections, including:  Youth Division, Arson Squad, Sex Offense Branch, Homicide Branch, Domestic Violence Coordinator and Youth & Preventive Services Division (YPSD).  I am currently the squad supervisor of the Fraud Unit.  I have testified before the Grand Jury in connection with investigative matters in each of these sections.  For several years, I was a critical member of the MPD/DEA joint federal taskforce, REDRUM, which investigated high profile homicides.  Working as a member of the REDRUM Task Force, I assisted other police agencies (FBI, DEA, ATF, Montgomery County Police, King George's County and Prince George's County Police). My law enforcement training and experience include preparation, presentation and service of criminal complaints, arrest and search warrants.  I have participated in the execution over two hundred search warrants.  I have been the affiant on affidavits in support of approximately one hundred search warrants.  In addition, I have received training in general law enforcement and criminal investigations to include violations involving credit card fraud, forgery and theft statutes.

3.      The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation, on information conveyed to me by

other law enforcement or government officials, and on my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known to the government. The below stated took place within the District of Columbia.

INVESTIGATION

4.        On or about Thursday, October 5, 2006 around 5 a.m., Metropolitan Police Department ("MPD") officers were on routine patrol in the 600 block of I Street, Northwest, Washington, D.C. , when they conducted a stop of the defendant Marquise Carter. The defendant was placed under arrest for impersonating a police officer and possession of an air pistol. In a search of defendant's car incident to his arrest, the officers found a list of names of potential customers for fraudulent credit cards and/or victims of credit card fraud, a magnetic card scanner used to code credit cards, various and multiple credit/debit cards with defendant's name on them, several gift cards found to have been purchased with stolen credit cards, three cellular telephones, a laptop computer, an external hard drive, and memory cards.

5.    Based on your affiant's discussions with other law enforcement agents with training and experience in investigations involving access device fraud, your affiant has learned that:

> a)    Individuals involved in access device fraud use computers, hard drives and memory cards to store credit card and identity information.
>
> b)    Individuals involved in access device fraud will record their financial activities, including their expenditures of money and wealth, in ledgers and records within their computers and

often times require the use of a computer system to create official looking documents and financial records, which are then stored on their computer and computer-related storage devices:

c)  Individuals involved in these fraudulent activities generally document their activities and associations with other co-conspirators by keeping ledgers, telephone numbers and notes.  This information can be kept on computer systems and computer-related storage devices which are sometimes encrypted or password protected; and

d)  Individuals involved in these fraudulent activities use personal computers to correspond with other individuals involved in the fraudulent activity through electronic mail, or the Internet, and this information or documentation of this correspondence can also be kept in computer systems and computer-related storage devices, which are sometimes encrypted or password protected.

6.    In order to completely and accurately retrieve data maintained in computer hardware and/or on computer software, to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is necessary that the items seized be processed by a qualified computer specialist in a laboratory setting.  This is true because of the following:

a)          Computer hardware, software, documentation, passwords,

and data security devices may be important to a criminal investigation in two distinct and important respects:  (1) the objects themselves may be instrumentalities, fruits, or evidence of criminal activities, and/or (2) the objects may have been used to collect and store information about criminal activities (in the form of electronic data).

b)      Computer storage devices (such as hard drives, diskettes, memory cards, and back-up tapes) can store the equivalent of thousands of pages of information.  Computer hardware and computer software may be utilized to store records which include, but are not limited to, those relating to business activities, criminal activities, associate names and addresses, and the identity and location of assets illegally gained through criminal activity.  Additionally, a user may try to conceal criminal evidence by storing it in random order with deceptive file names.  This may require searching authorities to examine all of the stored data to determine which particular files are evidence, fruits, and/or instrumentalities of a crime.  This sorting process can take substantial time, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

Definitions

    i.    <u>Computer Hardware</u>

Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices (such as central processing units); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers);and there stored information; and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to

restrict access to computer hardware (such as physical keys and locks).

ii.    <u>Computer Software</u>

Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like Word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

iii.    <u>Computer-Related Documentation</u>

Computer-related documentation consists of written, recorded, printed or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

iv.    <u>Passwords and Data Security Devices</u>

Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of

alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

## ITEMS TO BE SEARCHED AND EXAMINED

A.  the Acer laptop computer (serial no. LXAxxxxxxxxxxxx) for

1)      all records, receipts, notes, ledgers and other documents and material relating to the production, use or trafficking in of access devices.  The term "records," "documents," and "materials" include records in all forms, such as those in any photographic form, in any mechanical form, and any form      that is stored in electronic or magnetic form on hard drives,  compact discs, zip disks, magnetic tape or floppy disks;

2)      Computer records or files relating to the income or expenditure of money, inventory, costs, searches of

internet sources relating to the production, use or trafficking in of counterfeit access devices;

3)      Computer records or files reflecting names, addresses, telephone numbers, credit card numbers and other contact and/or identification data relating to financial transactions, including computer software relating to the production and use of counterfeit access devices;

4)      Any notes, calendars, chronologies, and summaries of daily activities; and

5)      Any spreadsheets, databases, charts, and tables related to daily activities in the use of the computer.

B.      the external hard drive for

1)      all records, receipts, notes, ledgers and other documents and material relating to the production, use or trafficking in of access devices. The term "records," "documents," and "materials" include records in all forms, such as those in any photographic form, in any mechanical form, and any form that is stored in electronic or magnetic form on hard drives, compact discs, zip disks, magnetic tape or floppy disks;

2)      Computer records or files relating to the income or expenditure of money, inventory, costs, searches of

internet sources relating to the production, use or trafficking in of counterfeit access devices;

3)      Computer records or files reflecting names, addresses, telephone numbers, credit card numbers and other contact and/or identification data relating to financial transactions, including computer software relating to the production and use of counterfeit access devices;

4)      Any notes, calendars, chronologies, and summaries of daily activities; and

5)      Any spreadsheets, databases, charts, and tables related to daily activities in the use of the computer.

C.      the memory cards for

1)      all records, receipts, notes, ledgers and other documents and material relating to the production, use or trafficking in of access devices. The term "records," "documents," and "materials" include records in all forms, such as those in any photographic form, in any mechanical form, and any form that is stored in electronic or magnetic form on hard drives, compact discs, zip disks, magnetic tape or floppy disks;

2)      Computer records or files relating to the income or expenditure of money, inventory, costs, searches of

internet sources relating to the production, use or trafficking in of counterfeit access devices;

3)    Computer records or files reflecting names, addresses, telephone numbers, credit card numbers and other contact and/or identification data relating to financial transactions, including computer software relating to the production and use of counterfeit access devices;

4)    Any notes, calendars, chronologies, and summaries of daily activities; and

5)    Any spreadsheets, databases, charts, and tables related to daily activities in the use of the computer.

## CONCLUSION

7.    Based on the above information, MPD has developed probable cause to believe that a person or persons have committed a serious felony offense against the United States in violation of Title 18, United States Code, Section 1029 (Access Device Fraud) and probable cause to believe that the Acer laptop computer (serial no. LXAxxxxxxxxxxxxxxxxxxxxx), external hard drive, and the memory cards seized from Defendant Marquise Carter contain evidence, instrumentalities and/or fruits of this offense, which may be seized pursuant to this warrant that this affidavit supports.

8.    Therefore, your affiant respectfully requests that a United States District Court Search Warrant be issued for the electronic data contents of the Acer laptop computer (serial no. LXAxxxxxxxxxxxxxxxxxxxxxxxx), the external hard drive and the memory

cards recovered from Marquise Carter on October 5, 2006, and for the seizure of all electronic data contents which are evidence of access device fraud.

 WHEREFORE, the undersigned respectfully requests that the Court approve the attached search warrant.

_____

     Richard N. Espinosa

*Sworn to and subscribed before me this \_\_\_\_\_ day of October, 2006.*

_____

*UNITED STATES MAGISTRATE JUDGE*